Sheldon *v.* The Connecticut Mutual Life Insurance Company.

---

SHELDON *vs.* THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

Where in an action on a life insurance policy, it appeared, that following an application of the insured for a policy, was a declaration signed by the applicant, but which was not made a part of the policy, stating that he agreed that the insurance proposed should not be binding until the premium, which was payable partly in cash and partly by note, should be received by the defendants, or their accredited agent; it was held, that parol evidence was admissible, for the purpose of showing a waiver of such pre-payment, that the defendants' agent verbally agreed that the policy of insurance should take effect immediately upon the approval of the application, and that the premium note might be made, and the cash premium paid at some future time, at the convenience of the parties, provided that such agreement was made known to and acquiesced in by the defendants.

Where in such action the plaintiff claimed that the defendants' general agent for procuring applications for insurance, had authority to make such agreement, which the defendants denied; and the court submitted to the jury the question whether said agent had or had not such authority; it was held, that such course was correct.

Where the defendant in such action, claimed that it was necessary to the

validity of the policy, that it should be delivered to the assured, and the court instructed the jury, that when an application for insurance had been approved and accepted by the defendants or their proper agents, and a policy had been made and executed, and notice thereof given to the applicant, the contract was complete, and the applicant entitled to the policy; it was held, that such instructions furnished no ground for a new trial.

THIS was an action brought by the administrator on the estate of Nathaniel Curtiss, deceased, upon a policy of insurance for three thousand dollars, claimed to have been made upon the life of said Curtiss by the Connecticut Mutual Life Insurance Company.

The defendants pleaded the general issue, with notice that they should offer evidence that the insurance premium had never been paid, and the policy never executed or delivered. The cause was tried at the term of the superior court, for the county of Hartford, holden in December, 1855.

On the trial, the plaintiff admitted that the policy of insurance set forth in the declaration had never been in the actual possession of himself or of Curtiss, but that in pursuance of a contract made by Curtiss with the defendants, through their agent, D. W. Norton, the defendants issued and executed said policy at their office in Hartford, on the 14th day of September, 1849, and on the 18th of the same month, forwarded it to said Norton at Suffield, where he and Curtiss then resided, and on the same day Norton countersigned it, but retained it in his hands until the 27th of October; that a rule of said company required their agents to return all policies not taken by the insured within thirty days; that Curtiss died at Suffield, on the 21st day of October, 1849; that upon the request of the secretary, Norton returned said policy to the office in Hartford on the 27th day of October, when the signature of the president on it was erased.

The policy, with the application and certificates, were in the usual form, and were read in evidence. Following the application was a declaration signed by Curtiss, which contained the following stipulation. " And I do further agree that the assurance hereby proposed shall not be binding on

said company, until the amount of premium as stated therein shall be received by said company, or an accredited agent."

The application and certificates were made at Suffield, and then delivered to Norton, who forwarded them to the defendants at Hartford.

The plaintiff further offered evidence to prove, that at the date of said application, Norton was the general agent of the defendants for the purpose of making contracts of insurance on the lives of persons in Suffield and its vicinity, and as such agent was authorized to and did make the contract of insurance on which the plaintiff claimed said policy was applied for.

The defendants denied that Norton was their general agent to make contracts of insurance, and that he had any authority to make any waiver on their behalf, or to deliver a policy to the insured until said premium should be paid, or until one-half thereof should be paid, and the other half secured by the promissory note of the insured, payable to said company and on interest, or that he had any other power or authority except as aforesaid.

It was admitted that no note for any part of the premium on said policy had ever been given by Curtiss, and the defendants claimed that no part of said premium had ever been paid, or offered to be paid, by said Curtiss, or by the plaintiff, and that said policy had never been delivered and had never taken effect, and that no contract of insurance binding on said company had ever been made.

The plaintiff also claimed and offered evidence to prove, that according to the usage and course of business between Norton and said company, it was not required or expected that the identical money received by Norton for premiums on insurances effected through his agency, should be paid over to the defendants, but that it should be and generally was, when received, mixed by Norton with his other funds, and credited to said company in a general account kept by him of receipts and payments growing out of his agency, and that the usage and practice was, for Norton from time to time to make general payments to said company on account, with-

out reference to any particular premium by him received; said company and Norton making occasional settlements, when said account was adjusted and the balance ascertained and paid.

That, after the appointment of the plaintiff as administrator on Curtiss' estate, and more than ninety days after said Curtiss' death, and before the commencement of this suit, he went to the office of the defendants in Hartford, prepared to pay, and offered to pay to the agent of said company the whole amount of the premium due on said policy, which said agent refused to receive : and that he then demanded the amount of said insurance on said Curtiss' life, which said agent refused to pay, because as he claimed, said policy had never been delivered and never took effect.

That before making said application, Norton, professing to act as the agent of the defendants, and to be authorized in their behalf to make contracts for insurance, applied to Curtiss, and solicited him to obtain an insurance on his own life in said company, through the agency of Norton, and to induce Curtiss to make an application for such insurance, informed him that his inability to make immediate payment of the premium need be no bar to his immediate insurance, and proposed that if he would then make application for such insurance, and if his application should be accepted by the company at Hartford, his insurance should upon such acceptance immediately take effect, and that he, Norton, would provide for the cash portion of the premium himself, so that the omission of Curtiss to make immediate payment should not operate to prevent the immediate operation of the policy and his immediate insurance, and that for one half of said premium, Curtiss could, at some convenient time thereafter, make his note payable to the company, and pay the other half to said Norton. And that Curtiss, relying upon said information and induced thereby, acceded to said proposal, and agreed to take through Norton, as the defendants' agent, the insurance proposed upon the terms aforesaid ; and that he then made an application for insurance upon his life

and thereupon Norton agreed, that if his application should be accepted, his insurance should immediately take effect, as if the premium had in fact been paid by him; that Norton, would himself advance, or otherwise provide for, that part of the premium which was to be paid in cash, to be repaid by Curtiss to Norton at some convenient time thereafter, at which time Curtiss should also execute his note to the defendants for the other half of said premium.

The plaintiffs claimed that such agreement with Norton, was equivalent to and in effect the same as an actual payment of said premium to Norton, or if not, that it amounted to a waiver on the part of the defendants of their right to insist upon the payment of said premium before said policy should take effect; and that Norton had authority to make such agreement and waiver; and to prove that such arrangement and agreement were made, the plaintiff offered the testimony of Doctor Samuel B. Low, who, as the plaintiff claimed, was present at the making thereof.

To the admission of this testimony the defendants objected, upon the ground that the same was contradictory to said written application, and that if such arrangement or agreement were in fact made, they were merged in the written contract between said company and said Curtiss, and constituted no part of the contract between said parties. But the court overruled the objection and admitted the testimony.

The defendants contended that no such arrangement as was claimed by the plaintiff, was in fact made. Norton testified that he had received from them no instructions which differed from those of a printed circular, which embraced the following clause.

" You are not authorized in any case to receive the premium or any part thereof at the time of making the application, and not until the policy is received by you. Our policies are not binding on the company, until the agent through whom they are issued countersigns them and receives the premium. And in all cases therefore when there is any change in the risk by reason of sickness or accident,

between the time of making the application and the receipt of the policy by you, you will withhold the policy, and report the circumstances to this office. The company reserve the privilege in all-cases of delivering the policy or not, as they please, after it has been sent to the agent; as the issue depends only upon the delivery by the agent, and receipt of the premium. * * If from any cause policies are not taken by the parties applying, but remain in your hands for thirty days, you will return them to be cancelled."

Norton further testified that those instructions had never been dispensed with by him, that no part of the premium in the present case had ever been paid to him, that said policy had never been delivered to Curtiss, and that the agreement between him and Curtiss, regarding the note to be made to him for the cash part of the premium, was an individual transaction between him and Curtiss, with which the defendants had nothing to do : that he had never delivered any policy of the company, until the whole premium was paid as the rules of the company required, except in a few instances, when by a private arrangement between him and the applicants, he had himself advanced the cash part of the premium for them, and taken their notes for the same payable to himself individually, and their premium note to the company upon the delivery of the policy. And it appeared that by the regulations of the company, the premium notes given to the company were required to be on interest, and were liable to assessments.

The plaintiff offered no direct evidence that the defendants knew of such arrangements as Norton admitted, unless his knowledge was to be deemed their knowledge. But the plaintiff claimed that, it being admitted that Norton had for several years been extensively engaged as their agent, from that and from the other evidence in the cause, their actual knowledge and approbation of such acts of Norton, as well as of his practice to make such arrangements, ought to be inferred and found by the jury.

And the plaintiff, in his cross examination of Norton, in-

quired whether there had not been between him and Curtiss, a practice, under which fire insurance premiums had been charged by him to Curtiss in his general account, and applied upon Curtiss' account against Norton for Curtiss' work and other ordinary items of account. To this question the defendants objected, on the ground that the transactions or usages of Norton, as the agent of other insurance companies with Curtiss, ought to have no effect upon the rights of the defendants. But the court overruled the objection, and permitted the enquiry to be made, and Norton answered that he had no recollection of any such transaction.

As to what transpired or was said, at the interviews between Norton, Curtiss and Low, testified to by said Low, Norton and Low were the only witnesses, and Norton was the only witness as to what transpired, or was said, at the interview between Norton and Curtiss, at the time when said policy was claimed by the defendants, to have been tendered to, and refused by Curtiss.

Other testimony was introduced as to the extent of Norton's authority as agent, and among other things the defendants introduced the printed circular before mentioned; and the plaintiff introduced sundry printed instructions, and claimed that the same had been delivered to Norton for public circulation, and had been circulated by him, and that Norton had long before the application of Curtiss, been accustomed to make arrangements with applicants for policies, like that which the plaintiff claimed was made with Curtiss, and that the defendants were informed thereof, and made no objection thereto.

The plaintiff claimed that the defendants had held out Norton to the public as their general agent, with full power to make such agreements as the plaintiff claimed had been made with Curtiss, and that the defendants were bound and concluded by such agreement.

That under such agreement, said policy having been executed by the company and countersigned by Norton, became in the hands of Norton, immediately, an effective

instrument for the use and benefit of Curtiss, in the same manner as if it had been in fact delivered over by Norton into the actual manual possession of Curtiss, and was in contemplation of law in the possession of Curtiss, if such possession was necessary to give it existence and effect.

The defendants claimed that there never had been any waiver of the payment of the premium by them, before said insurance should become binding; that inasmuch as the premium had never been paid, the contract of insurance was not binding upon them; that the only contract between them and Curtiss, was that which was formed by the acceptance of the application of Curtiss with the accompanying certificates; that if Norton had the power to waive, and had waived the payment of the cash part of the premium before said insurance should take effect, this constituted no waiver, or dispensation of the necessity of paying the part which was to be paid by his note, before said insurance should take effect; and also that said policy had never been delivered and that no action could be maintained thereon until a delivery of the same.

The court instructed the jury as follows: " In order to give effect to a contract of insurance, it is not indispensably necessary that the policy should be actually delivered to the assured, but when an application has been made, and that application has been approved of, and accepted by the company or its proper agents for that purpose, and a policy has been thereupon made executed and completed, and notice of such execution given to the assured, the contract of insurance is complete, and the applicant is entitled to the policy. In this case the great question is, was a complete contract made.

" This, like all other corporations, speaks by its agents; so that when we enquire, what have the defendants done in relation to this contract, it is equivalent to the enquiry, what did Norton, within the scope of his authority, as the agent of the defendants, do in the matter. It is admitted that Norton was the general agent of the company for the pur-

pose of procuring applications, and delivering policies and receiving premiums. And the plaintiff claims, that he had as the agent of the company, and in its behalf, authority to make the contract in question.

" The defendants deny that he had any authority to make such contract so as to bind them. Whether he had or not is a question for the jury, and upon the whole evidence, you are to determine what was the authority of Norton in this case.

" If you find the contract to be, that Norton agreed that he would take the credit of Curtiss, and regard himself as having received the premium, making himself the debtor of the company for the amount, and Curtiss his debtor, and that nothing further remained for Curtiss to do, then I think the insurance took effect. Norton would thus become the debtor of the company, and Curtiss the debtor of Norton, and the company would be bound by the policy, from the time it was returned to and countersigned by Norton and notice given to the plaintiff. But if the contract was that Curtiss should give Norton his note before the insurance would attach, then the company could not be bound until the note was given. It seems to me that the case must turn upon the enquiry, what was the contract between Norton and Curtiss about the immediate payment of the premium, and whether what Norton said amounted to a waiver of such immediate payment.

" The defendants claim that the plaintiff can not recover, because the premium has never yet been paid in any way, and it is agreed that it has not in fact been paid; but the plaintiff claims, that he has since his appointment as administrator on said Curtiss' estate, offered to pay said premium, and has done what in law is equivalent to such payment. And if you find that the plaintiff being the administrator on Curtiss' estate, applied at the defendant's office, prepared to pay, and offered to pay the premium, or, if being so prepared, he was informed by the authorized agent of the company, that the payment of the premium then would make no difference, that the loss would not be paid because

the policy had not been delivered, or had not attached, it was in my opinion a waiver of the right of the company to refuse to pay the loss, because of such non-payment.

The parol agreement of Norton, relative to the payment of the premium, in one sense forms no part of the final contract between the company and Curtiss, but in connection with the conduct of the parties, and the evidence of the usage and practice of the agent, if brought home to the knowledge of and acquiesced in by the company, it is evidence properly received, for the purpose of showing a waiver by the company of their right to insist upon a strict performance of their regulations in regard to such premium. Whether there was a waiver of the right of the company to insist upon the giving of the premium note before the policy should go into effect, is a question depending upon the same principles of law and of fact as the other question regarding the immediate payment of the money.

The jury returned a verdict in favor of the plaintiff, and the defendant moved for a new trial.

*Hungerford* and *W. D. Shipman* (with whom was *Philleo,*) in support of the motion.

1. Parol testimony to prove the supposed agreement between Curtiss and Norton, was not admissible, and ought not to have been admitted. *The Glendale Woolen Company* v. *Protection Insurance Company*, 21 Conn. R., 19. *Higginson* v. *Dall*, 13 Mass., 99. *Stackpole* v. *Arnold*, 11 Mass., 27. *Warren* v. *Wheeler*, 8 Met., 97. *Jennings* v. *Chenango Insurance Company*, 2 Denio, 75. *Logan* v. *Bond*, 13 Geo., 192. *Chase* v. *Jewett*, 37 Maine, 251.

2. Said supposed parol contract did not constitute any part of the real contract between the parties, and the court ought to have so charged the jury, and in conformity with the claim made by the defendants.

3. The court in charging the jury, that if they found the contract to be, that Norton agreed that he would take the credit of Curtiss, and regard himself as having received the premium, making himself the debtor of the company for the

amount, and Curtiss his debtor, and that nothing further re-
mained for Curtiss to do, that then the insurance took effect.
And also in this, that the parol agreement of Norton, relative
to the payment of the premium, in one sense formed no part
of the final contract between the company and Curtiss, but in
connexion with the conduct of the parties, and the evidence
of the usage and practice of the agent, if brought home to
the knowledge of and acquiesced in by the company, it was
evidence properly received, for the purpose of showing a
waiver of the strict performance of the regulations of the
company, in regard to such premium.

4. The court erred in charging the jury, that to give effect
to the contract of insurance, it was not indispensably neces-
sary that the policy should be actually delivered to the
assured, but that when an application had been made, and
was approved of by the company, or its proper agents, and a
policy was thereupon made executed and completed, and
notice of such execution given to the assured, the contract
of insurance was complete, and the applicant was entitled to
the policy ; and in omitting to charge the jury as claimed by
the defendant, that a policy, to be effectual as such, must
be actually or constructively delivered by the party exe-
cuting the same with a view to its taking immediate effect
without any other or further act, in order to render it a valid
instrument, and the charge of the judge is no proper answer
to the claim made.

Delivery is always necessary to give effect to a deed.

*T. C. Perkins* and *Pardee*, against the motion.

1. The court admitted proof of the contract made with the
assured by the defendants' agent, not in any manner to con-
tradict or vary the policy, but to prove that the "payment"
mentioned therein had been made to the acknowledged sat-
isfaction of such agent.   1. This proof was admitted in con-
nection with evidence that such agent had full power in the
premises, and with the acknowledged fact, that although the
whole premium is referred to, and covered by the single word

" payment," yet, as such agent, he was authorized to give credit; thereby showing that as to one half of the premium, the liability of the insured was regarded by the defendants as payment. 2. Parol evidence of the form which a payment may assume is not a variance or contradiction of a contract or deed, in which a payment is mentioned as a sum of money in hand paid. 3. The agents agreement to waive immediate cash payment, in contemplation of law is a payment, and as such answers all the terms and requirements of the policy, and the jury rightly found the fact of payment under the instructions given by the court, as to what facts, if the jury should find them, would constitute a payment.

2. The question respecting the extent of Norton's power as the agent of the defendants, was properly submitted by the court to the jury, as matter of fact with proper instructions as to the law touching facts. Sto. on Agency, § 73, 105, 126, 133.

3. The delivery of a policy of insurance is not indispensable to its validity. *Loring* v. *Proctor*, 26 Maine, 18. *Blanchard* v. *Waite*, 28 Maine, 51. *Palm* v. *Medina Mutual Insurance Company*, 20 Ohio, 529.

ELLSWORTH, J. It being agreed that the contract for insurance would not be binding until the premium of insurance was received or provided for, and there being no policy delivered to prove that this was done, it became necessary, on the trial below, for the plaintiff to show, that the contract was perfected, and that the precedent condition had been complied with, so that his intestate was entitled to demand and have the policy as agreed. This the plaintiff undertook to show; and offered evidence to prove that Norton, the agent of the defendants, (who did this business and the general business of insuring for the defendants in Suffield, where the parties lived,) solicited Curtiss the intestate, to become insured in their office; that Curtiss declined being then insured and wished delay, because he had not money on hand to pay the premium, as the terms of the policy required; that finally Norton agreed that he would provide for the premium

Sheldon *v.* The Connecticut Mutual Life Insurance Company.

himself, and it should be considered and held, to be paid to the company, and the note for the balance be given afterwards, and that the contract should be held to be good, when the proposals were accepted in Hartford, and the policy should be made out at a future time, bearing date from that day. It would seem as if this arrangement, if made out by the proof to the satisfaction of the jury, was material to the plaintiff's case, and would establish the validity of his claim to a proper policy of insurance. This arrangement is one of daily occurrence where parties agree for an immediate insurance, but time is given for the payment of the premium, and the execution, and delivery of the policy of insurance,—the thing to be done is agreed to be considered as done, so that the obligation to pay the premium is the payment, and the obligation to make out a policy is virtually the policy itself.

Now the precise objection of the defendants is this; the provision "premium paid" being in the written proposals, it is said that parol evidence can not be received to show that the insurance was to take effect before the premium was received, as this would be to vary the terms expressed in the writing. But this is not so. The principle of law is well enough stated, but clearly it has no application to this case. The evidence does not contradict or vary the writing, but is in harmony with it; for the mode of payment, or its legal equivalent or satisfaction, is no part of the writing as claimed; which is the real question in dispute. Nor is the parol agreement in the nature of a previous conversation merged in a written contract afterward made, and therefore to be held to be the exclusive evidence of what the parties have finally settled upon. The mode of payment, strictly, need not be any part of the contract of insurance; it may be collateral to it, and proveable as made before, or after, or at the time of the writing, unless the writing declares what the mode should be, which this does not.

We might go further, and deny that the words in the proposals, " and I do further agree that the assurance, hereby proposed, shall not be binding on said company, until the

amount of premium as stated therein, shall be received by said company, or an accredited agent," make the payment of the premium a condition precedent, as was claimed in the argument, because those words are no part of the policy either by recital or reference. They are part of a writing following the proposals, which says " that the preceding proposal answer and statement marked A. is correct, and shall be the basis of the contract between the parties." The paper referred to states certain facts, such as the age of the applicant, his place of residence, his occupation, his health, &c., which statements must be true, or the policy never takes effect; but the clause under consideration is not a proposal answer or statement; it is a collateral agreement, fixing the time when the risk shall commence by fixing the time of payment of the premium.

Besides, it is every day's experience and our reports are full of such cases, for persons to be held to have waived provisions and conditions inserted in contracts for their own special benefit, and therefore to be estopped from insisting upon that which is inconsistent with what they have said and done to affect others. The defendants were called upon to speak at the proper time, and can not now, after their silence or their co-operation, be permitted to disappoint others, who had a right to give them their confidence at the time. Curtiss supposed the premium was agreed to be considered as paid by the agent, when the proposition for insurance was accepted at Hartford. The jury have found that both he and Norton so understood it. And although the business was not done with proper care and attention, yet it was in fact done, and done at the request of the agent, who proposed to Curtiss to have the contract closed at the time and in the manner it was closed, and we can not permit the defendants to deny or repudiate the act of their agent, if indeed he was their agent in the transaction; which brings us to the next point in the argument.

The defendants admitted that Norton was, and had been their general agent for getting insurances in Suffield for many years before; and further, his manner of doing their

Sheldon *v.* The Connecticut Mutual Life Insurance Company.

business, the jury find, was well known to them and not disapproved of by them; but the defendants deny his authority in this instance to dispense with the payment of the premium on the making of the contract. This is a question of fact, and the existence and extent of this authority is just the question which the plaintiff claimed should go to the jury, and so the court viewed it in their charge to the jury; and in the course taken by the court, we can not see any error or ground of complaint. The plaintiff insisted that, it being admitted that Norton was the general agent of the defendants, as already stated, the jury should infer from that fact, and much other evidence which was before them, that he was fully authorized to do as he had done. They alluded particularly to the printed circular and commission sent by the defendants to their agents throughout the country, and to pamphlets and books accompanying them, and the knowledge which the defendants had of the manner in which Norton and their agents generally did their business abroad, and the fact that the defendants had never expressed any dissent to this continued course of things. We can not say that the jury did wrong in coming to their conclusions. Little evidence of Norton's authority would be necessary, after the admission that he was, and long had been, the agent of the company, to transact their business in Suffield, and certainly not as to his authority to agree that he would advance the premium himself, and charge it in a private account to the applicant, and to do whatever else was incidentally necessary and customary, in business of that nature. The powers of insurance agents locally established, are in the main pretty uniform and general in this country. These agents are furnished with blank policies, which need only to be filled out, and countersigned and delivered, to perfect the contract of insurance, though in some cases there are restrictions and conditions, which persons who ask for insurance must take care to observe and follow, or they will not obtain a valid insurance. The extent of these powers has too often been discussed and too often decided, to need our comments, and may be found in all the elementary books and in numerous reported

cases.   We refer to one case only which was not cited on
the argument, though the principle is familiar to every re-
spectable lawyer, *New York Central Ins. Com.* v. *Nat. Pro.
Ins. Com.*, 20 Barbour, 469.   One of the conditions of the
policy there was, that no insurance should be binding until
the actual payment of the premium.   The money was in the
bank, where the agent was in the habit of making his de-
posits, deposited to the credit of the insured.   The cashier
told the agent of the insurers, at the time the arrangement
for the insurance was made, that he could have the money.
The agent directed him to let it lie, saying that when he
wanted the money, he would draw for it.   It was not in fact
drawn by him until after the fire.   Held, that the agent had
waived a strict compliance with the condition, and that he
had authority to do so.   A like principle was settled by this
court in *Peck et. al.* v. *The New London Mutual Insurance
Company*, 22 Conn. R., 575, where we held that a local agent
could waive a condition contained in the policy of insurance.

But it is said, even if Norton could agree that the cash part
of the premium should be considered as paid, by being
charged in the agent's private account, this can not apply to
the note to be given for the balance of the premium.   We
think the judge left this point in a correct manner to the jury
in his charge.   He instructed them, that the question de-
pended on the same principles of law and fact, as the ques-
tion respecting the payment of the cash part of the pre-
mium.   This is correct.

It is further claimed that the court misled the jury by in-
forming them, " that when an application has been made
and that application has been approved and accepted by the
company, or its proper agents for that purpose, and a policy
has been thereupon made, executed and completed, and
notice of such execution given to the assured, the contract of
such insurance is complete, and the applicant is entitled to
the policy.   It is said that the jury would naturally under-
stand from this, that the payment of the premium, or any
arrangement for its payment, is unimportant, if only a
policy is made out, and ready to be delivered on payment.

This objection will vanish when it is remembered that the remarks were made with reference to the objection, that there would be no contract of insurance unless a policy was executed and delivered, in which sense the remarks were right and proper, for the contract of insurance may be perfected, and become mutually obligatory, without a policy executed in form and delivered, and we can not think that the jury could have understood that the payment of the premium was not necessary before the policy, or the contract of insurance could take effect, if it was not waived, or considered as paid.

The plaintiff in his cross-examination of Norton, enquired about his practice with Curtiss, as to crediting him in account with premiums in other insurances. The answer being in the negative, the reception of the evidence, if incorrect, lays no foundation for a new trial; for the question and answer did not affect the verdict.

The motion for a new trial for a verdict against evidence, which is an address to the sound discretion of the court, we do not grant. We add only a word to what we have already said. There were two main facts in dispute, which the jury found for the plaintiff; first, the arrangement between Curtiss and Norton, that the premium should be considered as provided for, and second, the authority of Norton to do this act. These questions being settled in favor of the plaintiff, he was entitled to recover, and we see nothing in the evidence which makes us believe that the verdict is against evidence.

We do not advise a new trial.

In this opinion, the other judges, STORRS and HINMAN, concurred.

New trial not to be granted.