THERESIA HEIMAN

*vs.*

THE PHŒNIX MUTUAL LIFE INSURANCE CO.

Where *independent of the policy* there is nothing to show any acceptance of the application for life insurance, or any agreement to insure, the presumption is that, while there were *negotiations*, there was no contract, and no purpose to contract otherwise than by a policy made and delivered upon simultaneous payment of premium.

The application for life insurance is a mere *proposal* on the part of the applicant. When the insurer signifies his acceptance of it to the proposer, and not before, the minds of the parties meet, and the contract is made. This acceptance must be signified by some act.

In this case the acts of the defendant, relied upon by plaintiff as showing an acceptance of her proposal, are the making of the policy, the forwarding· of the same to defendant's agent, whose duty it was to receive the premium and deliver the policy, and the presentation of the policy to plaintiff's alleged

Heiman v. The Phœnix Mutual Life Insurance Company.

agent for payment of premium. *Held,* that these acts are evidence not of a contract to insure, but of a willingness to enter into such contract upon payment of the premium by the other party.

An application for life insurance, being a *mere proposal,* cannot be converted into a *contract* by delay on the part of the company applied to, or its agent, in rejecting or accepting the same.

A delivery of an instrument may either be actual, that is by doing something and saying nothing, or verbal, that is by saying something and doing nothing, or it may be by both. But it must be by something answering to one or the other or both these, and with an intent thereby to give effect to such instrument

There being nothing to show any transfer of the legal manual possession of a policy of insurance to the alleged assured, or to any person for her, so as to constitute a delivery in fact, the policy is *prima facie* incomplete as a contract, and the burden is upon said alleged assured to show that the real intention and understanding was to pass the legal title and possession of the policy without or before payment of premium, and without delivery in fact, and, in this case, to show that, though retained by defendant's agent, the policy was constructively delivered, so that said agent's possession was plaintiff's possession.

Application of the foregoing principles to this case, in which it is *held* that no facts or evidence appear, tending to show a contract for insurance or the delivery of the policy.

Appeal by the plaintiff from an order of the court of common pleas for Ramsey county, denying a new trial. The case is fully stated in the opinion.

LORENZO ALLIS, for Appellant,

BIGELOW & CLARK, for Respondent.

*By the Court.*—BERRY, J.—By the pleadings and otherwise it is admitted in this case that the defendant is a life insurance company, duly incorporated under the laws of Connecticut, and authorized to transact business in this state; that on or about July 15th, 1869, at St. Paul, an application was made to defendant through its duly authorized agent by Hirch Heiman for an

insurance upon his life for the benefit of the plaintiff, his wife; that defendant made out a policy of insurance upon such application, and transmitted the same to its agent in Minnesota by whom it was received on or about the 3d day of August, 1869.

Plaintiff introduced testimony tending to show that about August 10th, Hirch Heiman went out of the state, (of which he was a resident,) upon a temporary absence, leaving his minor son Isidor Heiman, in charge of the business which he, (the said Hirch,) followed, to wit: that of a clothier; that on or about August 25th, and about fifteen days after the said Hirch had departed from this state as aforesaid, one Thompson, who had received the policy from Van Duzen, (defendant's general agent in Minnesota,) came to the store in which Isidor was conducting his father's said business, and informed said Isidor that he had the policy before mentioned, at the same time exhibiting it to said Isidor, (who read it,) and informing him that the first annual premium, about $100, was to be paid in cash and a note to be executed for about the same sum; that Isidor told Thompson, that he could not pay him any money, but would sign the note; that at said Thompson's request he signed the note for and in the name of his father; that Thompson took the note, and put it with the policy in an envelope; that said Isidor then asked said Thompson for the policy, but that Thompson said he would keep it till said Hirch Heiman got home, and would wait for the money, and keep the policy good until then; that said Thompson did not deliver the policy to said Isidor; that said Isidor informed said Thompson that he expected his father home in a few days; that the note has never been returned.

It was admitted that the note signed by said Isidor as aforesaid, was of the the tenor following with the blanks filled up. "Hartford          Twelve months after date for value received I promise to pay the Phœnix Mutual Life Insurance

Company or order          Dollars, with interest payable annually in advance at 6 per cent. it being for part premium due and payable on policy No.—of said company on the life of        , dated        , which policy, and all payments or proffts which may become due thereon, are hereby pledged and hypothecated to said company for the payment of the note."

Said Isidor, witness for plaintiff, testified, on cross-examination, as follows: "Mr. Thompson asked me for the money. He said there was so much to be paid. He asked if I could pay it. I said I was pretty short, but that my father would be home soon. He did not urge me to pay it, * * did not tell me that it was necessary to pay the premium." Josiah Thompson, a witness called by plaintiff, testified that he received the policy from Van Duzen, (the defendant's general agent in the state,) "to deliver and collect the premium on it the same as on other policies; that he had no special instructions in this case; that his instructions in every case were, that the policy was not to be delivered till he received the premium."

It further appears that said Hirch Heiman never returned home after his aforesaid departure from the state; that he died on the 9th day of September, 1869, and it was admitted that proper proofs of his death had been duly served upon defendant. The plaintiff, having introduced some other evidence not important in considering the questions presented upon the appeal, rested her case. Thereupon defendant moved to dismiss upon the ground that plaintiff had "failed to establish a cause of action." The motion having been granted, plaintiff made a motion for a new trial, and from the order denying the latter motion she appeals to this court.

Plaintiff argues that the dismissal was erroneous, first, because, even admitting that the policy was never delivered,

there was evidence in the case tending to prove *a contract of insurance*, upon which evidence, the jury should have been allowed to pass.

This position has reference to the evidence that an application for insurance had been duly made, and a policy based thereupon had been signed and sealed by the defendant and forwarded to an agent, whose duty it was to receive the premium and deliver the policy to the insured.

Plaintiff contends that, upon this evidence, it was for the jury to determine whether the application had been accepted by the defendant, arguing that, if it had been accepted, the contract of insurance existed, although the policy, the formal instrument evidencing the contract, had not been delivered. But as, *independent of the policy*, there is nothing in the case tending to show any acceptance of the application or any agreement to insure, the *presumption* is that, while there were *negotiations*, there was " no contract, and no purpose to contract, otherwise than by a policy made and delivered upon simultaneous payment of premium." *Mackey vs. Mut. Ben. Ins. Co.,* 103 *Mass.* 92. See also *St. Louis Mut. Ins. Co. vs. Kennedy,* 6 *Bush,* 450.

The application for insurance is a *mere proposal* on the part of the applicant. When the insurer *signifies his acceptance* of it to the proposer, (and not before,) the minds of the parties meet and the contract is made. (*Tayloe vs. Merch. F. Ins. Co.* 9 *Howard* 390; *Flanders on Ins.* 109. This acceptance must be signified by some act, a simple mental acceptance—a mere thought—amounting to nothing.

Now the acts of the defendant, relied on by the plaintiff as showing an acceptance of her proposal, are the making of the policy, and the forwarding of the same to an agent, whose duty it was to receive the premium and deliver the policy to

the insured; to which may, in this case, be added the presentation of the policy to plaintiff's alleged agent.

But while these acts were indicative of an acceptance of plaintiff's application, they were, under the presumption above mentioned, evidence of an acceptance only as the basis of a contract to be entered into by a policy, which was to be made and delivered, so as to become operative as a contract, only upon the simultaneous payment of the premium. In other words, these acts on defendant's part were evidence, not of a contract to insure but of a willingness to enter into such contract upon performance, (*i. e.* upon payment of the premium,) by the other party

It may further be added, in reply to a portion of the counsel's reasoning, that the application being a *mere proposal* "cannot be converted into a *contract* by delay on the part of the company," or its agent, in rejecting or accepting it. *Flanders on Ins.* 109; *Ins. Co. vs. Johnson,* 11 *Harris* 72.

So far then as the first position taken by plaintiff's counsel is concerned, the dismissal of the action was not erroneous.

In the second place the plaintiff insists that the dismissal was wrong, because there was evidence in the case tending to prove a *delivery of the policy.*

It is not claimed that the exhibition of the policy to Isidor Heiman, or his temporary possession of the same while reading it, amount to a delivery. The policy was evidently handed to him for inspection simply, and not with the design of vesting its legal possession in him or in any person through him. *Mackey vs. Mut. Ben. Ins. Co. supra* 89. A delivery may "either be actual, that is by doing something and saying nothing, or verbal, that is by saying something and doing nothing, or it may be by both. But it must be by something answering to one or the other or both these, and with an intent thereby to give effect to the deed." 2 *Washb.*

*Real Prop.* (578), *and cases cited ; Stevens vs. Hatch*, 6 *Minn.* 74 ; *Mills vs. Gore*, 20 *Pick.* 35.

In the case at bar there is no evidence tending to show any transfer of the legal manual possession of the policy to the assured, or to any person for her so as to constitute a delivery in fact. This being so, the policy is *prima facie* incomplete as a contract, (*Collins vs. Ins. Co.* quoted in *Flanders on Ins.* 104 *note*,) and the burden is upon the plaintiff to show that the real intention and understanding was, to pass the legal title and possession without or before payment of the premium, (*Mackey vs. Mut. Ben. Ins. Co., supra,*) and without delivery in fact; and to account for the circumstance that the policy has not been put into her possession, as contracts of the kind usually are when completely executed; or, in other words, to show that, though retained by Thompson, the policy was *constructively* delivered, or in the language of the plaintiff's counsel, that Thompson's possession was the possession of the assured. To show this, plaintiff must prove that there was something said or done, or both, with the intent thereby to give effect to the policy.

Plaintiff relies upon the testimony of Isidor Heiman as follows: "I said I could not give him, (Thompson,) any money, as we were short, but I would sign the note, and I signed it for my father at Mr. Thompson's request. He took the note and put it with the policy in an envelope. I then asked him for the policy, but he said he would keep it till my father got home, he said he would wait for the money until my father got home, and would keep the policy good until then."

In considering this testimony it is material to bear in mind, that there was no manual delivery of the policy. This makes the refusal to deliver upon express request quite significant.

The refusal goes to show not only that Thompson did not intend to give effect to the policy, but that he meant to have

his intention clearly understood, but viewed in connection with Thompson's positive refusal to deliver, we think that a more particular analysis of the language above quoted places the fact, that there was no intent to give effect to the policy, beyond doubt. "He said he would keep it, (the policy,) till my father got home." Certainly there is nothing in these words indicating the intent referred to. "He said he would wait for the money until my father got home." This is not saying; that he will give credit for the cash part of the premium, and meantime hold the policy as a deposit, and as the property of the assured; but the policy is retained for the payment of the premium, (*see Hoyt vs. Mut. Ben. Life Ins. Co.* 98, *Mass.* 544.) Thompson saying in effect, " *I will not* deliver the policy, so as to make it operative, as a contract, because the money is not paid; but I will retain the policy, and wait until Hirch Heiman returns, to give him an opportunity to pay the money and receive a delivery of the policy."

The case is not analogous to those in which policies have been in *fact delivered,* (though in violation of their own terms or of authority,) before premium paid, pre-payment having been waived or a credit given for the premium. Policies issued under such circumstances have been upheld because *actually delivered,* and with intent that they shall take effect. *Sheldon vs. Conn. Mut. Life Ins. Co.* 25 *Conn.* 207. *Goit vs. National Protection Ins. Co.* 25 *Barb.* 190; *Sheldon vs. Atlantic Ins. Co.* 26 *N Y.* 460. There is no credit given in the case at bar, not only because none is expressed, but because, there being no delivery of the policy but a refusal to deliver it, there was no consideration moving from the defendant for any obligation on the part of the assured, for which to give credit; and for the further reason, that there was no consideration moving from the assured for any agreement on the part of the defendant to give credit. *Hoyt vs. Mut. Ben. Life Ins. Co. supra.* "And

would keep the policy good until then." Now keeping in mind that, when this was said, there had been no actual delivery of the policy, but a refusal to deliver it, and that there had been no agreement to hold it as the property of the assured, it seems to us that these words can only mean, that he would keep the policy as good as it then was. He does not agree to *make* it good, to make it operative as a contract, to give effect to it as a policy, but simply to *keep it good*. As is suggested by the counsel for defendant, we think this means nothing more than that he would retain the policy, that is to say, would not return it to the home office, (as is usually required,) but would keep it good; so that when Hirch Heiman returned he might have the same opportunity to pay the premium, and take a delivery of the policy, that he would have had if then present.

It is to be observed also that Thompson said he would keep the policy, wait for the money, and keep the policy good, all *until Hirch Heiman got home.* All of these alleged promises are based then upon the idea that Heiman would get home. The words italicised are then, as it seems to us, in the nature of a condition, upon the fulfillment of which, whatever binding force these promises may possess, depends.

It is as if Thompson had promised to do these things until Heiman came home, if, or provided, he came home. When the fulfillment became impossible, as it did by Heiman's death, the promises, if ever binding, bound no longer.

As to the note, when it is considered with reference to the circumstances under which the testimony shows it to have been taken, it has no tendency to show a delivery of the policy, actual or constructive, or any intent to give effect to the same as a contract. Admitting that Isidor Heiman had authority to make the note, it could at most only go in part payment of the premium, and unless it was so agreed, (and there is no

evidence of such agreement,) the assured would not, upon simply executing and delivering the note, be entitled to a manual delivery of the policy, or to claim that Thompson's possession of it should be held to be her possession; for, notwithstanding the execution of the note, the condition upon which defendant's liability upon the policy is to attach, is *in part* unperformed. *Flanders on Ins.* 110; *Sandford vs. The Trust F. Ins. Co.* 11 *Paige* 547.

Nor is the retention of the note by the defendant or its agent important. Admitting that it is negotiable paper, and that it does not carry notice of its infirmity upon its face, there is nothing in this case to show that defendant has negotiated it, or claims to hold it adversely, or is not ready to deliver it up on proper demand. Certainly it is not defendant's duty to seek out the proper person to whom to tender it or give it up. *See Parker vs. Parker,* 1 *Gray* 409, and *St. Louis Mut. Life Ins. Co. vs Kennedy, supra.*

Passing from these details, when we consider generally that all that was said and done at the interview between Thompson and Isidor Heiman was said and done in immediate connection with Thompson's positive refusal to deliver the policy, we think there is no reasonable construction of his language or acts, which will justify the inference, that, though he refused to give effect to the policy by manual delivery, he intended or was understood to intend, that he would hold the policy as the property of the assured, thereby making a constructive delivery of it, so that his possession would be assured's possession, and the policy be as good to her, to all intents and purposes, as if he had made manual delivery thereof. And this inference is still more unwarrantable when we call to mind that, upon the testimony introduced by plaintiff, it appears that Thompson was instructed not to deliver policies until the premiums were paid, and that, in the absence of clear affirma-

tive evidence to the contrary, he is not to be presumed to have disobeyed his instructions and violated his obligation to his principal.

As in our opinion, then, the plaintiff failed to adduce evidence, which, by any fair construction, tends to establish a contract of insurance or a delivery of the policy, actual or constructive, the order dismissing the action was right and the order denying a new trial must be affirmed. Ordered accordingly.