Mr. Justice Mac Arthur
delivered the opinion of the court:
The declaration in this case is upon a policy of insurance issued to the plaintiff, whereby the defendant insured the life of her son, Edward N. Jacobs, for her benefit, in the sum of $5,000.
The consideration is stated to be the payment, by the plaintiff to the defendant, of the sum of fifty-seven dollars and forty cents quarterly. The policy, which was offered in evidence at the trial, expresses that it was made in “ consideration of the representations and declarations made to it in the application thereforand also of the due payment of the premiums just mentioned. The defendant objected to the introduction of said policy in evidence, on the ground that there was a variance between it and the policy set up in-the declaration, inasmuch as it did not state the entire consideration. It is admitted that the representations and declarations which constituted the application had been furnished the defendant before the policy issued. It was, therefore, an executed part of the consideration. The risk of the insurers was intended to be undertaken on the unexecuted part of the consideration, which was the payment of the premiums as they should fall due. We áre therefore inclined to the opinion that there was no such variance as would defeat *639 the action. Pittman vs. Fuller, 13 Mich., 113; 15 Gray, 249; May on Ins., 235, 98 Mass., 381; 1 Chitty Pl., 299. The objection that the application presented to the defendant, when the insurance was effected, is not set forth in the declaration, must be disposed of in the same way. It is no part of the plaintiff’s cause of action. If the representations were untrue there could be no recovery. But we all think it is for the defendant to falsify them, and not for the plaintiff to prove their performance in the first instance. Besides, we are inclined to hold that it is sufficient to declare generally in this way upon a policy of life-insurance. It not only avoids great prolixity, but relieves the trial from numerous embarrassments growing out of alleged variances. It is also in conformity with the simplified forms of pleading recognized by our own rules, and therefore is to be upheld. Fowler vs. Insurance Company, 15 Gray, 249; Life and Fire Insurance Company vs. Johnson, 4 Zabriskie, 676; S. C., 1 Big., 327; New York Life-Insurance Company vs. Graham, 2 Duvall, 506; S. C., 1 Big., 114.
The third exception is upon the point whether the payment of the overdue premium revived the policy. The receipt is dated on the day the premium was due, and the agent of the company, who was examined as a witness, stated that he delivered it to the insured who had previously paid him the money, and that he had authority to accept a premium at any time within thirty days or a month after it fell due. But it is alleged that that period expired on the 27th of December, or one day before he received the money and gave the receipt. The receipt itself is executed with all the formalities required by the policy. Without going into a computation of time to ascertain whether the period within which the agent could receipt for the premium had expired, we are satisfied that the facts stated constitute a re-instatement of the policy. It is true that the policy is to cease as a liability upon the defendant if the premium is not paid as it becomes due; and it is also true that the defendant’s agents have no power to waive the conditions that are expressly stipulated for. It is, nevertheless, competent for defendant to waive forfeitures, so as to give renewed effect to the contract.
In the case of Bonton vs. The Fire-Insurance Company, decided by the supreme court of Connecticut, the court employ the *640 following language in speaking of a condition of this kind: “But that as that provision was inserted for the solebenefit of the defendants, it is only voidable at their election, and that it was, therefore, competent for them to waive a strict compliance with it after the time stipulated for the payment of such premium; and that in case of such waiver the policy would be revived, and continued obligatory on the defendants on its original terms; and further, that the reception, by them or their authorized agent, of the premium for that purpose, after that time, would have the effect of reviving and continuing the contract evidenced by the policy as though it had been strictly complied with by the insured. The authorities in support of this opinion are so numerous, uniform, and explicit, and the reasons for it are so .fully and satisfactorily given in them, that we deem it sufficient only to refer to them. Winy vs. Harvey, 27 Eng. L, and Eq., 140; Buckber vs. United States American Insurance and Trust Company, 18 Barb., 541; Sheldon vs. Connecticut Mutual Life-Insurance Company, 25 Conn., 207; Angelí on Insurance, sec. 213, and note, sec. 343.” We recognize this authority as settled law and as entirely decisive of the point under consideration. To allow the company to treat the policy as at an end, in view of the fact that they have received the consideration for renewing it, would be to suppose a singular degree of license from the ordinary obligation of a contract.
Another point in the case is that hearsay evidence was allowed to go to the jury. This has reference to the testimony of A. It. Jacobs, a brother of the deceased, who was permitted to testify what he heard his brother say as to his having staid away from home all night in the month of August, 18T2. The fact of his remaining from home all night was drawn out on the cross-examination by defendant’s counsel; and the plaintiff’s counsel then asked, “What did he say induced him to- do it ?” The answer would be clearly hearsay, unless the door was opened for its introduction by cross-examination, and we are inclined to think that such was the ease. The fact of his brother’s absence in the nighttime had been particularly inquired into on the other side, and the communication made to the witness was explanatory of that circumstance. At least it appears to be sufficiently responsive to the new matter to justify its admission.
*641 It remains only to consider the last exception, which is to the instruction of the court upon the meaning of the clause of the policy which declares that it shall be null and void in case the insured shall die by his own hand or act, “ voluntarily or otherwise.” In the charge of the court, the jury were instructed that in order to sustain the defense they must believe from the testimony thatthe insured intentionally lay down, where he was found dead, for the purpose of ending his life. It must be admitted that this part of the charge was correct, unless the word “ otherwise ” makes any act not willful or intentional by which the insured may take his own life a forfeiture of the insurance.
The counsel for defendant admitted that the courts had decided that, although the language of the policy avoided it, in case the insured shall die by his own hand or act, yet if he committed the act of self-destruction under the influence of insanity the company would still be liable. In order to meet this interpretation the defendant inserted this term “otherwise,” so that they would be exonerated if an insane man took his own life. But the word is not used in this limited sense. It can be reasonably and naturally understood as embracing every species of self-destruction, whether intentional or accidental, caused by the act or handof theinsur'ed. If the act is by his own hand it is only necessary that it should be voluntary or otherwise in order to avoid the insurance. There is nothing in the ordinary or popular acceptation of the term which would limit its sense only to mean insanity. It is admitted that such was not the understanding of the company, and that this construction would defeat the intention of both parties; and probably no court in America would undertake to enforce a provision so dangerous and uncertain. If the defendant desires to contract that death by insanity shall invalidate the policy, they can easily adopt terms to express that intention. Meanwhile we think that no stress is to be laid upon the use of a word so vague and intangible, and so impracticable in its application. Besides, there is no direct testimony of insanity in the case, and no jury in the world that were not themselves crazy would have been warranted in considering the subject.
We think the court below construed the policy properly, and the judgment must be affirmed.