The opinion of the court was delivered, by
DeBlanc, J.
This suit is brought on two policies of insurance for *236 each $5000, issued and delivered by defendant in favor of the minor children of Jefferson Thomas, on the life of their father.
The company admits the issuance of the policies, but denies its liability, on the grounds :
1. That the premium due and payable at the issuance of the policies, and the interest on the loan note have not been paid.
2. That — instead of paying the premium in cash, as is alleged in the policies, the assured gave his promissory note, in which are included the premium and interest — failed to pay it at its maturity, and — by said failure — forfeited his policies, which were declared canceled, and which he agreed to surrender.
The company lastly asks that — in case it be held that said policies are still in force — the amount of the notes delivered by the assured, for the premium and interest, be deducted therefrom.
The principal question presented in this controversy is whether parol evidence was admissible to show:
1. ThaL — in giving credit for the premium, and taking a note therefor, the intentions of the parties were that the clause of the policies which declares them not binding, and that no risk attaches until the premium is received, was to attach at the maturity of the notes given by the assured, if at that time they were not paid.
2. That, after Thomas’ failure to pay the premium notes, there was a distinct agreement between him and the company’s agent, in and by which he promised to surrender the policies, defendant to return his notes, and that — in pursuance to said agreement — the policies were canceled.
Two important facts are admitted : Thomas died without surrendering the policies — the company is now in possession of his notes. The policies were canceled on defendant’s books, but when and under what circumstances ? This was shown by oral testimony, to the introduction of which plaintiff objected, and for the following reasons :
1. That it is an attempt to vary, alter or modify — by parol — the stipulations, of a written contract, so as to destroy its vitality, and show that it never existed.
2. That an acknowledgment contained in a written contract, and without which it could not be enforced, is as conclusive against the party making it as any other part of the contract, and cannot be contradicted by parol.
3. That Thomas’ pretended promise to surrender the policies was made without the consent of the beneficiaries, and that at no time he had the right to give up their title.
These policies were issued on the 19th of June, 1871, and — in each of them — there are the declarations that,i: in consideration of the sum *237 of §168 60 to them in hand paid by Jefferson Thomas, and of the annual payment o£ a like amount to be paid on or before the 19th of June in every year next succeeding the date of this policy, the company do assure the life of the said Thomas in the amount of five thousand dollars payable to his wife, and — in case of her death before the demise of her husband — to his legal heirs, etc.,” and “ that this policy shall not be binding on the company until countersigned by its agent at Baton Rouge, and the advance premium paid," &c.
Read alone, as written in the policies, those declarations assert a fact, and that is that the advance premium was paid by Thomas and received by the company, and justify the presumption that if the required payment had not been made, the policies would not have been delivered to the assured, and — according to one of its stipulated conditions, would have become null and void.
On the 19th of June 1871, Thomas subscribed and delivered to the company three notes payable to its order — two in twelve months, and the other in three months from their date, and — in each of them — he acknowledged that they were given for the premium due and payable on the policies, which — with the interest to accrue thereon — were, in the words of the parties’ agreement, pledged and hypothecated for the payment of the notes.
Thomas died after his wife, on the 1st of June 1872, before the maturity of two of the notes and without having paid that which matured ninety days after the issuance of the policies. During at least that delay, and though the required premium had not been paid in cash, the policies remained in force and constituted a valid agreement, entered into for a lawful purpose, by parties legally capable of contracting, and whose consent had not been produced by either error of fact, error of law, fraud, threats or violence.
The company contends that its obligations under that agreement have ceased to exist, and why ? Because the first maturing of Thomas’ notes arid the interest due on the loan which was capitalized and included in said note, have not been paid, and he — on that account— promised to surrender the policies. If so, its obligations were extinguished, not by the unexecuted promise to surrender the policies, but by the effect of the dissolving condition,
Under the written agreement evidenced by the policies and the notes, that position is untenable, and for two reasons — 1st: the contracts, sued upon do not — in this State, belong to that class of contracts which are dissolved of right, when either of the parties do not comply with his engagements, but to another, a different class, the dissolution of which must be demanded by suit or by exception — and 2d: because a contract, the consideration of which is — partly—an advantage — stipu *238 lated for a third person, whose assent is not necessary to complete or perfect the contract, cannot be extra-judicially revoked as to the advantage so stipulated, without the consent of said person, whose acceptance of the gratification is timely manifested, in such a case as this one, by presenting the policies at the death of the assured, and claiming to be paid the amount of the insurance. C. C. 2045 (2040) — 2046 (2041)— 2047 (2042) — 1890 (1884) — 1902 (1896). Marcada, vol. 4. p. 489 — Mourlom, 2 vol. p. 635 — C. N. art. 1184.
In this instance, relying on a pretended forfeiture of the policies, which — it alleges — occurred during the life of Thomas, the company did not, by a direct action against him, judicially ask the revocation of the agreement which it charges that he has violated, nor does it now, and •by exception to plaintiff’s demand, ask a revocation which it considers as already accomplished, and — as we have said — by the failure of the assured to comply with the conditions of that agreement, and by his subsequent promise to return the policies.
The counsel representing the company insist that the 'consent to take Thomas’ note,1 and the delivery of that note, do not constitute a payment of the premium, but that these facts only prove that time was ■granted for its payment. To sustain this defence, the company’s agent was examined, and he testified — in substance — that the extension so •granted carried with it the conditions of the policies, including that of a lapse of the risk; if the premium was not paid within the extended delay.
The note taken in lieu of the cash contains no such condition, but— ■on the contrary' — contains another, an adverse stipulation, which contradicts and repels the construction insisted upon by defendant, and that stipulation is that the payment of said note was secured by a pledge of the policies and all interest thereon accruing. How explain or Imagine the necessity of that pledge, if — unless the notes were paid at maturity — the policies were to be held as having never attached ?
There was — it is urged — between the company’s ageht and the as•sured, a verbal agreement, not inserted in either the policies or the notes, •and it was that, if he failed to pay the premium note at its maturity, the ■policies would be forfeited. When due, that note was sent to its agent to be collected, he so testified, and he gave it and the others to a sub--agent, with instructions to deliver them to Thomas and get back the ■policies. The sub-agent declared that he had presented the premium ■note, demanded payment of the same, and thereafter a surrender of the policies ; that the assured had told him that he could not pay the note, would call on the company’s agent and surrender the policies; but the sub-agent did not mention that he offered to return either the note which he presented, or any other.
*239 These declarations, counsel argue, were introduced, to show the full intent oí the parties in making the contract of the 19th of June. To show that intent, the best evidence is that which was reduced to writing, which bears the parties’ signature; it is the contract itself. Its recitals are free from obscurity, and one of.the most important is “that the policy shall not be binding on the company until the advance premium be paid;” and another — as important as the first, is “that said premium was paid; and — inasmuch as the declarations referred to were introduced by defendant to prove, in contradiction of the company’s written acknowledgment, that this vital condition has not been complied with, their object — it is manifest — is not merely to establish the ulterior forfeiture of any admitted contract — but to establish that a contract ■evidenced by five written instruments — two policies and three notes— and which is not assailed on account of error or fraud, is not such as it is represented in those instruments; still more — that it has not for a moment existed, and from its inception to its pretended perfection, never was but a project to insure and to be insured, binding on Thomas alone.”
Mr. Greenleaf said : “ In so far as a receipt is evidence of a contract .between the parties, it stands on the footing of all other contracts in writing, and cannot be contradicted or varied by parol” — and eminent jurists, here and elsewhere, have almost invariably held that “ the written instrument is the safer criterion of what was the real intention of the parties, the terms of whose proposals, the conditions of whose acceptance are presumed to be merged in said instrument, and that — in the interest of justice and mankind — oral testimony should not be received to contradict it, as — in the absence of fraud, deceit or mistake, it is the highest and best evidence of the parties’ intent and of their contract.”
O. 0. 2237 (2234) — 1945 (1940) — 2276 (2256) — 11 L. 416 — 13 L. 9 — 18 L. 347 — 5 A. 315 — 10 A. 737 — 19 A. 217 — 1 Greenleaf Evid. 373 — 11 Mass. 38 — 5th Md. 109 — 14 Wend. 116 — 12 Pic. 40, 562 — 1 Bigelow 27, 51, 595, 703 — 25 Conn. 207, 542 — 9 Howard 403, 19 Howard 318 — Bliss. 598 — 49 111. 180 — 20 Barb. 471 — 6 Broom 429 — 17 N. Y. 199 — 7th Moakes 459.
We entertain no doubt “ that where a policy of insurance contains a condition that the insurance shall not be binding until the actual payment of the premium, the insurers — if they elect to do so — may waive that condition, it being one inserted for their benefit, and in which they alone are interested, and that such waiver may be established by evidence of an express agreement to that effect, or by circumstances from which a waiver may be inferred.”
As held by the Supreme Court of New York, “the general rule that receipts — being mere admissions — are liable to contradiction and ex *240 planation by parol, may be universally true as applicable to mere receipts when they are disconnected with, or unnecessary to give validity to, contracts or agreements of any kind. When they make part of a contract, as in deeds and bills of lading, the same rule is applicable when the paper is used as a receipt or acknowledgment simply, to defeat an adverse claim, and not as upholding the contract. But it is quite another thing when it is sought to contradict a written receipt incorporated into the contract, for the purpose of defeating the contract itself. The writing read as a whole shows a Valid contract, and in this case the' receipt, in connection with the condition, shows that to this policy the condition (thus waived) has no application. There being no pretense of fraud on the part of the assured, it would be a fraud upon them to allow the witness now to contradict this acknowledgment for the purpose of bringing the contract within the provision referred to, and thus defeat the policy. The defendants should be estopped by their receipt from alleging that the policy was void because the acknowledgment was untrue.” 25 Barbour, p.p. 190, 191, 192, 193.
This doctrine has not been invariably adhered to in the other States of the Union, but wherever adhered to, the reasons given for its application — if contestable — have not been successfully contested, and — in Louisiana — that doctrine, which we consider to be as just as it is wise, is embodied in the article of our Code which abolished the exception of non numerata, pecunia.
C. C. 2237 (2234).
In England, it was held by the House of Lords “ that a policy purporting to be signed, sealed and delivered, by two of the directors of an insurance company, in presence of their secretary, and according to the powers vested in the directors by the deed of settlement of the company, must be conclusively taken, as against the company, to have been not only duly signed and sealed, but also duly delivered ; that such a policy is complete and binding, as against the party executing it, though —in fact — it remains in his possession, unless there is some particular-act required to be done by the other party to declare its adoption of it, and that it is not necessary that the assured should favorably accept and take away the policy, in order to make the delivery complete.”
2d S. R. H. of Lds’ cases, 296.
In Massachusetts, policies, though not under seal, have, nevertheless, ever been deemed instruments of a solemn nature, subject to most of the rules of evidence which govern in case of specialties,” and there can be no division of opinion as to the fact that — if oral declarations were allowed to vary or change their terms and stipulations, it would often happen that an entirely or partially different contract would be substituted to the written one, and that the parties’ rights and their ob *241 ligations would depend less on the written instruments, than on the memory and understanding of those present at the formation of the contract; and — as remarked by the Chief Justice of the Supreme Court of New Jersey — a rule of law admitting such evidence would be a repeal of the great primary rule that written agreements are not to be varied or contradicted by parol. .
Broom, vol. 6, p. 371, 372.
In a case in which — at the trial — the fact of non-payment of the premium was not denied — the same court said: “This policy of insurance, executed by the president and secretary of the company, contains a formal acknowledgment of the payment of the premium in question, and this should prevent the defendants from averring or showing non-payment for the purpose of denying that the contract ever had any legal existence.”
“ The usual legal rule is that a receipt is only prima facie evidence of payment, and may be explained; but this rule does not apply when the question involved is not only as to the fact of payment, but as to the existence of rights springing out of the contract. With a view of defeating such rights the party giving the receipt cannot contradict it. An acknowledgment of an act done, contained in a written contract, and which act is requisite to put it in force, is as conclusive against the party making it as is any other part of the contract; it cannot be contradicted or varied by parol.”
6th Broom, p.p. 430, 431.
In his Commentaries, Chancellor Kent said: “ The receipt in the policy of the premium is conclusive evidence of payment, and binds the insurer, unless there be fraud on the part of the insured.” Here, as no fraud is alleged, and as the evidence received in the lower court excludes even the idea that any deceit was resorted to, practised or intended by the insured, the testimony contradicting the acknowledgment that the premium has been paid should have been rejected.
Kent, 3 vol., Com. p. 260. 20 Barb. 471-19 A. 217.
Our own legislation expressly provides, as to contracts for the payment of money, which are not reduced to writing, that they may be proved by any other competent evidence; and — as to those which are reduced to writing, that parol evidence shall not be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.
C. C. 2277 (2287) — 2276 (2256) — 5 A. 315 — 12 M. 684 — 4 A. 441 — 25 A. 491.
In Knox vs. Liddell et als. this court said : “ It has been urged that the acts spoken of in this article — the last referred to by us — are those only which are mentioned in the preceding one, and which relate to the *242 transfer of immovable property; and the counsel has attempted further to restrict the article to authentic acts. This is contrary to the settled jurisprudence of the State.”
5 M. N. S. 1 — 8 M. N. S. 200 — 4 L. 1, 29 — 6 L. 255 — 7 L. 333 — 8 L. 290 — 9 L. 572 — 10 L. 205, 209 — 5 E. 113.
“ Les deux mots contre el outre le contenu aux actes expriment exactement le principe, qui revient á dire ceci: on ne peut ni contradiré en rien les énonciations de l’acte, ni lien ajouter á oes ónonciations * * du moment qu’on a fait un écrit, méme dans le cas oü l’on n’ótait pas tenu de le faire, la loi ne permet pas aux parties de se rejeter dans les difficultés de la preuve testimoníale, comme si cet écrit n’existait pas. * * La pensée bien evidente de la loi est qu’on ne sera pas admis a prouver les explications verbales qui ont précódó, accompagnó ou suivi la redaction de l’écrit, pour arriver, soit a restreindre, soit a ólargir, soit & modifier d’une maniere quelconque les mentions de cet écrit, qui doit toujours étre accepté tel qu’il est.”
Marcadé, vol. 5, p.p. 104 and 105.
Thomas died within one year from the issuance of the policies, and, by the delivery of his three notes, prepared at and sent from the company’s office, had settled on conditions written and accepted by the company — lor every cent which — as a premium or otherwise — was to be paid by him during that year. The policies were canceled on the company’s books; but that cancellation, without an actual return, or even a legal tender of the notes, was premature, unautliorized-and null. Whilst the policies remained in the hands of Thomas, the notes in the company’s possession, as long as the latter retained the privilege of electing between the dissolution or enforcement of the obligation evidenced by said notes, the contract which — by a proper course and proper proceeding — -might have been dissolved, continued to subsist. 27 A. 113.
“ It is urged — as remarked by the Supreme Court of New York— that Mr. Hathorn promised the agent to bring the policy to the office, to be canceled, when he was to receive the return premium, and the agent so testified. Were this undisputed, it neither amounted to a valid agreement that the policy should be held and deemed canceled, without a return of the premium, nor a waiver of performance of the condition on which the right to terminate the risk depended.”
55 Barbour, 42, 43 — 47 Ill. 516 — 51 Ill. 350, 351 — 4th Bigelow’s Cases, 370.
Plaintiff claims interest at the rate of five per cent from the 4th of September 1872, and that is from about ninety days after the death of Thomas; but, as it does not appear that due notice was given of his death to the company, and — as by an express condition of the policies— its obligation to pay the amounts of insurance did not arise but ninety *243 ■days after notice and proof of the death of the assured, no interest can be allowed, except from judicial demand.
It is therefore ordered, adjudged and decreed that, the judgment appealed from is annulled, avoided and reversed.
It is further ordered, adjudged and decreed that Mrs. Julia Trager, as tutrix of the minor children of the late Jefferson Thomas and Caroline E. Trager, recover of the Louisiana Equitable Life Insurance Company of New Orleans, the sum of ten thousand dollars, with interest thereon at the rate of five per cent per- annum from the nineteenth day of February, eighteen hundred and seventy-four, and the costs in both courts.
It is further ordered, adjudged and decreed that the following credits are allowed to said company — to wit: one for the sum of two hundred and forty-two dollars and ten cents, with legal interest thereon from the nineteenth of September, eighteen hundred and seventy-one, and two for fifty-six dollars each, with legal interest thereon from the nineteenth of June, eighteen hundred and seventy-two.
It appearing that Mrs. Julia Trager is dead and that Ben A. Day has been appointed dative tutor of the minor children of Jefferson Thomas and Caroline E. Trager, this case is re-opened as to this matter alone, and the decree thereon rendered on the 13th of January 1879 corrected so as to read as follows, to wit:
It is therefore ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed.
It is further ordered, adjudged and decreed that Ben. A. Day, as dative tutor of the minor children of Jefferson Thomas and Caroline E. Trager, recover of the Louisiana Equitable Life Insurance Company of New Orleans, the sum of ten thousand dollars, with interest thereon at the rate of five per cent per annum from the nineteenth day of Eebruary eighteen hundred and seventy-four, and the costs in both courts.
It is further ordered, adjudged and decreed that the following credits are allowed to said company, to wit: one for the sum of two hundred and forty-two dollars and ten cents, with legal interest thereon from the nineteenth September eighteen hundred and seventy-one, and two for each fifty-six dollars, with legal interest from the (19th) .nineteenth of June eighteen hundred and seventy-two.
Rehearing refused.